UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 24-80102-CR-CANNON

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

JASON JAMES ATHA,

       Defendant.

_____/

## Defense Sentencing Memoradum

## And Motion for Variance

Comes now, Defendant **Jason James Atha**, by and through his undersigned counsel, and files his sentencing memorandum and Motion for Variance.

**I.    Introduction**

On December 5, 2024, defendant Jason J. Atha pled guilty to a violation of 18 U.S.C. §§ 2242(b)—attempted enticement of a minor—and 2252A(a), transportation of child pornography. The Presentence Investigation Report (PSR) in this matter calculates a total offense level of 210-262 months in custody.

Mr. Atha respectfully submits that, taking into account the factors under 18 U.S.C. § 3553(a) and other mitigating factors, a significant variance below the advisory

1

guidelines range is appropriate, in the interests of justice and is sufficient, but not greater than necessary, to fulfill all the goals of sentencing. Mr. Atha requests that the Court impose as to Count 1, a sentence of 10 years imprisonment, the mandatory minimum sentence, and, as to Count 2, a sentence of 5 years imprisonment—the mandatory minimum sentence, and to run those sentences **concurrently** to one another.

## II. The Relevant Factors Under 18 U.S.C. § 3553(a).

### A. The History and Characteristics of Jason J. Atha.

The PSR gives a general overview of the history of Mr. Atha's life. The details, however, are more compelling.

Mr. Atha grew up in a military family with his father serving in the U.S. Air Force in Germany. When the elder Mr. Atha completed his military service, he returned the U.S. and settled in Colorado, pursuing a career in dentistry and orthodontics—a career path that Jason Atha would also pursue. At age 13, Mr. Atha was diagnosed with Non-Hodgkin Lymphoma, a type of cancer that affects the lymphatic system. The cancer was sent into remission with radiation, but the radiation damaged his coronary arteries. He was advised that this condition would affect him later in life. In 2021, he required stents placed in his coronary arteries to address the damage that was done by the radiation, however, the stents proved insufficient and, in 2022, he required open heart surgery to include triple artery bypass and aortic valve

2

replacement. Since that time, he has closely managed his health with medication and routine coronary care.

Notwithstanding his health issues, Mr. Atha started a family and a embarked on a successful career as a dentist. On the family side, Mr. Atha was married for many years, had two daughters and remained in the Denver area where he maintained close relationships with his sibling and parents. His father's letter to the Court recounts Mr. Atha as a very involved and energetic parent who was constantly supportive of his children, their schooling and their activities. By all accounts, Mr. Atha was devastated by his divorce from his wife and the breakup of his family, but he remained actively involved with his family and successfully co-parented with his ex-wife. Unfortunately, his relationship with his ex-wife and children has suffered greatly due to his involvement in this case.

Mr. Atha's career was also successful. For over 20 years, Mr. Atha worked for the same dental practice serving the community in which he grew up and went to college. His employer for that entire 20-year period related to counsel "Jason worked for my office for 20 years and never had a complaint either personally or professionally." Atha treated numerous people in his community, including friends, family members and local college students from the nearby University. Atha donated his services to economically disadvantaged persons in his community and travelled annually to participate in free clinics to provide services to underserved communities

3

in other parts of the country. Extremely proud of his fulfilling career, Mr. Atha had to surrender his dental licensed due to his conviction in this case, effectively ending his career. The loss of his entire career, and the respect and relationships that accompanied it have been extremely difficult for Mr. Atha to cope with.

Notwithstanding the shock that the people in Mr. Atha's life have experienced with learning of his involvement in the offense conduct, Mr. Atha maintains a deep reservoir of support. A close friend and colleague observed that "Jason . . .has always been kind, dependable and honest" and "This situation is so out of character for him." A neighbor of 10 years—who is aware of the offense conduct—recognized that "[Jason] has been a phenomenal neighbor" and "we could not have asked for a friendlier or more helpful neighbor." Family members have described him "trusted," "admired" and "an ideal father" "loving," "kind" and "caring."

To be sure, the offense conduct in this case is truly aberrational for an individual who has been integral in the lives of so many. His involvement in this case eludes explanation in the light of his personal history.

For his part, Mr. Atha describes entering an online world which led him down a "rabbit hole" from which he was unable to emerge without being enmeshed. He has no history of similar conduct—at the time of his arrest in Palm Beach, agents searched his home in Colorado—including all his electronic devices, his computers, his home, and its contents—and found no contraband whatsoever. There was no CP

material, no encrypted hard drives or another other indicia of his involvement in similar offenses *See* DHS report dated 10-22-2024 (Of the 10 devices seized from Atha's home, each were determined to be "Negative for CSAM [Child Sexual Abuse Material]").

### B. The Nature and Circumstances of the Offense.

The offense, particularly as to Count 1, has been set forth in excruciating detail in the criminal complaint, the Indictment, and the factual proffer. Mr. Atha admitted not only the essential facts comprising the offense conduct, but he fully accepted responsibility for all of his conduct. With regard to Count 2—the transportation of child pornography—the offense conduct is not a traditional CP situation where Mr. Atha downloaded CSAM and viewed it on his computer or kept it on a hard drive. As noted above, none of Mr. Atha's devices at his home contained any CSAM. The conduct in Count 2 arises from content found within an application on his cell phone from which CP material could be accessed. The PSR mentions "thousands" of images, however, this does not describe CSAM that Mr. Atha downloaded, viewed or transported. It was more images that were accessible from the application he had on his phone. This was more in the realm of a portal than his own repository. Mr. Atha had no involvement in collecting or storing CSAM material. His only interaction with the material was in the app found on his phone.

5

### C. The Seriousness of the offense, Etc.

Mr. Atha acknowledges himself that this is a very serious offense. In addition, Congress has deemed the offense a serious offense (both counts) by virtue of the fact that it has enacted mandatory minimum sentences for the offense conduct. Still, in light of Mr. Atha's lack of criminal history, the devastating collateral and personal consequences Mr. Atha has already suffered and will continue to suffer, a 120-month sentence is not only sufficient, but is significantly punitive to reflect the seriousness of the offense and afford just punishment for the conduct in which Mr. Atha has acknowledged that he engaged.

### D. The Need to Afford Adequate Deterrence.

Mr. Atha has lost contact with his ex-wife and daughters and damaged relationships with longtime friends and siblings and other family members. Mr. Atha has destroyed the 20-year career he built for himself—a career that afforded him respect in his community and profession, that provided him and his family needed support, and for which he toiled for years to create. He has lost his job as a dentist and surrendered his license, The community in Colorado that paid him so much respect was rife with media reports providing lurid details of the offense, culled from the criminal complaint in this matter. He has dragged his family, both immediate and extended, through an unimaginable ordeal. He is financially decimated, having lost his home, his car, a great deal of his savings and much of his personal property. He will

6

wind up in prison for at least the next decade, be subject to significant fines and restitution and will be a registered sex offender, for life.

Now that everyone he knows – everyone he probably has ever known—is aware of the offense conduct, Mr. Atha will live the rest of his life under a microscope and under glow of derision and suspicion. All of this is a significant deterrent to Mr. Atha who, prior to this offense, was a conservative, law-abiding risk-averse dentist and father. A crime that occurred in the shadows of the internet has been exposed into the brightest of lights. Each of the foregoing components are significant deterrents to any future criminal conduct by Mr. Atha.

Similarly, even a mandatory minimum 120-month sentence (with 60m concurrent for Count 2) would be a significant deterrent to anyone similarly situated to Mr. Atha. If any person saw the devastating calamity that had befallen Mr. Atha's life—to only then serve a decade in prison--no person would rationally choose to engage in similar behavior. It stands to reason that had Mr. Atha had more insight into the potential damage he would cause by his action, it would have acted as a complete deterrent to any voyeurism or curiosity of the darker areas of the internet.

In short, even a shorter sentence would act as a significant deterrent to Mr. Atha personally and similarly situated persons generally. However, in light of the sentence the Court must impose, a 120-month sentence is more than sufficient to achieve this sentencing goal.

7

Finally, there is the psychological report of Heather Holmes, Psy.D. filed concurrently under seal. Dr. Holmes' analysis and report revealed that Mr. Atha scoring on a risk assessment tool, the Static-2002R places him "in Risk Level II— Below Average Risk Range for being charged or convicted of another sexual offense." See Holmes Report p. 6.

### E. The need to avoid unwarranted sentencing disparities.

18 U.S.C. § 3553(a)(6) provides that the Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

A review of several cases in the Southern District of Florida reveals that a 10 year/mandatory minimum sentence for the conduct in this case--a violation of 18 U.S.C. § 2422(b)—reveals that a 10-year sentence for Mr. Atha would not only avoid sentence disparities but would be fully consistent with similar such cases. (Concededly, the PSRs are sealed and the criminal histories in the following cases are not always revealed). For example,

*United States v. Ray*. **0:23-cr-60214-BB**. Ray was charged with Production of Child Pornography (18 U.S.C. § 2251(a) and (c) and Enticement of a Minor (18 U.S.C. § 2422(b). Mr. Ray pled to the Enticement count and admitted, in his factual proffer, among other things, to live-streaming himself touching his 5-month old son's penis. Mr. Ray received a **120 month sentence** to run concurrent with a similar state case in

Broward County (23-010426CF10). *See* Dkt. ## 29 (Factual Proffer) and 39 (Judgment).

*United States v. Spiegel*, **2:22-cr-14005-AMC.** Spiegel was charged with Attempted Enticement based on his online contacts and discussions about meeting up with what he believed to be a 14-year old girl for sexual contact. Unlike Mr. Atha, Mr. Spiegel did not accept responsibility for his conduct. He went to trial and lost. The Court sentenced him to **120 months in custody**. *See* Complaint, Dkt. 1 and Judgment, Dkt. #68.

*United States v. Mezzoiuso*; **9:23-cr-80034-KAM**. In this matter, the defendant enticed a minor to travel from the Bahamas to the U.S. for a sexual relationship on two separate occasions. He was sentenced to **120 months in custody.** *See* Factual Proffer Dkt. # 46 and Judgment Dkt. #48.

*United States v. Lehner*; **21-cr-80094-DMM.** Similarly to Mr. Atha, Mr. Lehner communicated with an undercover agent online. The agent posed as a minor. After some explicit online chat, Lehner flew from Minneapolis to Ft. Lauderdale and was arrested. Similarly to Mr. Atha, Lehner made incriminating post-arrest statements and promptly accepted responsibility. The Court sentenced Lehner to **120 months in custody** with 5 years of supervised release. *See* Factual Proffer, Dkt. #22 and Judgment Dkt. #32.

*United States v. Taylor*, **0:21-cr-60336-WPD.** In this matter, Mr. Taylor—a school crossing guard--was charged with actual enticement (not an attempt) of a 13-year old girl. In a post-arrest statement, the defendant lied about his conduct, failed to accept responsibility for his conduct and took the case to trial. Still, he was sentenced to **120 months** in custody. *See* Complaint Dkt. #1, Judgment, Dkt. #81.

Comparatively, cases with similar charges but **far more egregious conduct**, including contact offenses, are the cases in which the sentences went well over the mandatory minimum. For example,

*United States v. Crow*, **Case No. 2:22-cr-14035-JEM**. In this matter, Crow in a position of trust as a cruise director, enticed and abused a minor child and made recordings of the sex acts and distributed the videos. The defendant was also actively seeking out another individual to procure minor children for sex. For enticement and CP production the sentence was 360m in custody. *See*, Factual Proffer, Dkt. #28 and Judgment Dkt. #52.

*United States v. Garcia*, **Case No. 2:21-cr-14044-AMC**. In this matter, the defendant was in a position of trust—a police officer—and enticed a 15 year old boy to engage in sex acts and produce porn of himself. He also admitted he was on duty when he solicited the victim to make videos of himself. He was sentenced for attempted production of child porn and attempted enticement to **310 months** in custody. *See*, Factual Proffer Dkt. #37, and Judgment, #71.

10

*United States v. Atkinson*, **9:23-cr-80205-RLR**. In this matter, the defendant was charged with enticement, but the factual proffer revealed that the defendant actually met and sexually abused and recorded the sexual encounters on multiple occasions. For two counts of enticement with **extensive** sexual contact with minors (actually picking up kids in his van before school), including allegedly selling the sexual images of the minors, he received a sentence of **360 months in custody**. *See* Factual Proffer, Dkt.#23 and Judgment #38.

### F. The Need to Provide Needed Medical and Mental Health Care.

As set forth above, Mr. Atha does require a great deal of medical attention, monitoring and care to manage his heart and other conditions. However, with regard to his offense conduct, Dr. Heather Holmes did find that, while Mr. Atha is low level risk (Below average risk) for re-offense, a sex offender treatment program is "clearly warranted." Dr. Holmes recommends the BOP's Sex Offender Treatment Program, which Mr. Atha is amenable in participating in. Clearly, in light of Dr. Holmes' report, Mr. Atha requires a treatment program and after care as a prevention tool to ensure that the offense conduct does not recur.

### Conclusion

By all measures, Jason Atha engaged in serious, but aberrational conduct. The collateral consequences of his conduct are arguably more devastating than any penal consequences he may suffer. His actions caused the implosion of his entire life. While

he accepts responsibility for his conduct, it is respectfully requested that the Court impose a sentence that addresses the offense conduct sufficiently, but still provides adequate opportunity for Mr. Atha to rehabilitate, and reassemble his life. This will, of course, require a herculean effort considering the damage that has been done. Considering the extremely productive and positive life that Mr. Atha had built, he is capable of doing it again. This will require him to have a sufficient number of productive years ahead of him to make it happen.

It is respectfully requested that the Court sentence Mr. Atha to an aggregate term of imprisonment of 120 months in custody (120 months on Count 1, 60 months on Count 2, to be served concurrently; the minimum amount of fines/restitution pursuant to statute; a ten year period of supervised release and a $200 special assessment.

Mr. Atha requests a recommendation to the BOP that he participate in the BOP's RDAP program in light of the information contained in the PSR.

Mr. Atha requests a recommendation to an appropriate facility that can provide both the sex offender and RDAP program closest to the District of Colorado.

///

///

Respectfully Submitted,

**ANTHONY M. SOLIS, APLC**
23679 Calabasas Road, Suite 412
Calabasas, California 91302
Telephone: (213) 489-5880
Email:  anthonymsolislaw@gmail.com

BY:     *Anthony M. Solis*
        Anthony M. Solis
        California Bar Number 198580

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 28th day of February, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Gregory Schiller, Assistant United States Attorney, (Gregory.Schiller@usdoj.gov), U.S. Attorney's Office, 99 N.E. 4th Street, Fourth Floor, Miami, Florida 33132.

*Anthony M. Solis /s/*